Case No. 14-6508, Victor Taylor v. Scott Jordan. Argument not to exceed 5 minutes uninterrupted, per side, followed by a question and answer period. Mr. Burke, you may proceed for the appellant. Thank you. May it please the Court, Mr. Dennis Burke and Tom Rancel on behalf of Victor Taylor. And this is a case where the Kentucky Supreme Court's ruling on a Batson v. Kentucky claim was contrary to or an unreasonable application of Batson v. Kentucky or clearly established federal law. There is a significant amount of relevant circumstances in this case that was before the state court indicating or strongly indicating that an inference of intentional discrimination. Not least, this is a case involving two black defendants and two white victims. It is a case that is out of the same county and the same, in fact, the same prosecutor's office as Batson v. Kentucky and Griffith v. Kentucky and in the same, during the same time period. This is a case where the prosecutor used four of his peremptory strikes to remove 67% or four of six black jurors and yet used only four peremptory strikes to strike four of 32 white jurors. This is also a case in which there is a chart of the prosecutor's jury chart in which he has listed the race of the jurors. And in fact, the prosecutor himself admitted when asked about his strikes, he admitted that it was, he had no other rational reason except that he had left one on, meaning one black juror on. The Kentucky Supreme Court announced its ruling or gave its reason for denying the Batson claim in Taylor 2, which is the post-conviction claim or appeal, which this court should consider based on Supreme Court precedent, including Wilson v. Sellers and Ilse Nunmaker. But even if it does not, there is still reason based, just based on the record that was before the Kentucky Supreme Court in Taylor 1, that the ruling is contrary to or an unreasonable application of Batson, both because of the race positive reason given by the prosecutor and based on the inference of prometheus jury discrimination prior to the explanations for those, for those reasons. And with that said, I hope I can answer whatever questions the court has. Thank you. And our procedure in these en bancs is to go in order of seniority with each judge having three minutes to ask questions of each side. And so, Judge Batchelder, you may proceed with your question. I am not going to ask any questions at this point. Okay. And I think I am next in seniority. And so, question that I have is, do you have a preference between the contrary to or the unreasonable application prongs, or do you think both are equally available to you? Well, they're both available, but I think the contrary to argument is the stronger argument because, as the court knows, within 2254 D1, the contrary to the unreasonable application are independent clauses. And in this particular case, the Kentucky Supreme Court, when they found or held without actually looking at the strength of Mr. Taylor's case that he was required to show other relevant circumstances, then that was a contrary to ruling on its face. And therefore, this court would then proceed to de novo review because that is contrary to Batson v. Kentucky. And you're getting that from the Taylor II decision, correct? That is correct. So does it matter in Taylor II whether the statement in Taylor II was a holding or dicta in Taylor II? Well, it really doesn't. So first, I think it was a ruling because it was presented both in the direct appeal and then it was raised in the 1142, and in particular in the 1142 brief before the Kentucky Supreme Court, in which the, you know, a claim of striking jurors violating the Equal Protection Clause and citing to both Batson, but beyond that, I think it's important for the court to look at what the United States Supreme Court intended for or intends for federal courts to do, and that is to look at the last reason state court opinion on that claim, which is in Taylor II where they explained exactly why they deny the ruling. And so, as far as the, you know, the Commonwealth has argued that it should only be Harrington v. Richter, but in fact in Wilson v. Sellers, the Supreme Court said that Harrington did not apply because there was no reasoned opinion in front of the court in Harrington, or in front of the federal court. In both Ills Unanimator and Wilson v. Sellers, there was a Supreme, there was a state court opinion with an explanation. Is there an explanation here from the trial court in Taylor I? From the trial court? No, well in Didn't the trial court say something? The trial court said that the question before us is whether or not the, whether the parties or the prosecution make strikes based on any reason at all. And, you know, he said, I don't know, but we certainly know what occurred here. That is a slight paraphrase, but he expressed a belief that was clear from the record what had occurred. They did not make a ruling. Thank you. Judge Clay? Counsel, I know that the Batson issue is the focus of this proceeding. Do you view yourself as having relinquished the Confrontation Clause issue? No, Your Honor. So all those issues were before the court, and then the opinion was vacated, the panel opinion was vacated. So all the claims that were raised in the panel before the panel are still in front of this court. All right, that's all I have, Judge Moore. Thank you. Judge Gibbons? I have no questions at this time. Judge Sutton? Yes, Counsel, so I'm not aware of too many precedents that allow you to look forward to later state intermediate or state Supreme Court decisions to figure out what the relevant EDSA judgment meant. But does this rule, is it a right, I mean, does it work in both directions? Could a later state Supreme Court decision clarify an earlier one in a way that helps the state, or is it only useful to the extent it helps in an amper claim for the defendant? Well, and it would actually, it would work if, for example, in Taylor too, if the Kentucky Supreme Court had explained its reason, and it turned out to be a reason that was not contrary to and not an unreasonable application of that, and then, in fact, that is what the federal court would be required to review before it made its ruling, because what the U.S. Supreme Court has said is the court is required to look at the relevant rationale provided by the state court, if one is available, which there was here. So the answer to that is yes. And that would be true even if the original decision was contrary to or an unreasonable application of Supreme Court law. In other words, the later court really could cure a prior violation? No, no. If, well, okay, so a couple of things. If the court didn't provide a summary reason at all in the first opinion, then they would not be able to cure it. I mean, they would simply be explaining what they did. So, you know, there wouldn't be a, you know, really anything to cure. They would simply be explaining what they did. However, Well, I mean, you know, this case is a good example. You know, it's really hard to understand what the prosecutor is saying, but let's say it was a little clear that he was misstating the law, but not completely clear. I take it a later decision, or maybe the best way to put it, I mean, couldn't we certify the question today? The Kentucky Supreme Court just to say what it was that was meant? No, I mean, there's, okay, so there's absolutely no reason to do that because the Kentucky Supreme Court said so. It said in Taylor too definitively why it ruled the way it did. But I'm just saying in general, I mean, if this later Supreme Court decision approach is relevant, I assume we can certify for clarification. No, because, again, what the Kentucky with the US Supreme Court and Wilson v. Sellers and in Ilse Nunnemaker talked about is the last reason Supreme Court opinion on that. My last real quick question. How is that consistent with Cullen v. Penholster, which forces you to only look at the fact record at the time? Can you supplement the law record, but not the fact record? So, in fact, the law that the Kentucky Supreme Court was looking at was the same law that, which is to say Batson v. Kentucky, that was in effect at the time that the appeal was decided. And remember that the trial court did not make a Batson ruling on this. So the step one, the analysis that was done by step one was by the Kentucky Supreme Court. And at that time, Batson v. Kentucky was, you know, had been decided. In fact, it was decided on the day that the Taylor verdict came down. So, you know, there was no, there's no issue as far as whether or not the, you know, it doesn't, it doesn't contradict Penholster at all. Thank you. Judge Cook. Your mute is on. Asked the question I was holding. So, and he did it way better. So I take it. No questions. No, no. Okay, Judge Griffin. Yes, Mr Burke, I'm interested in what issues are before us on rehearing on bond. And I had your petition for rehearing on before me. And I don't see you raising the issues of the confrontation clause or ineffective assistance of counsel that were before us right stage. And why, why are you not limited on right here on bond to the issues that you petitioned for rehearing. Well, your again that because the entire opinion was vacated. So I, you know, obviously we didn't brief. Or, you know, argue those claims. But, you know, as those as it stands right now, though, the entire Opinion has been vacated. I know it's been vacated. The issue is, are those other two issues are they appeal on on rehearing or have you forfeited them. By not not asking for rehearing of the panels majorities decision on those two two issues. I recognize the whole case we have to resolve. But my question is, are, are those two issues really viable because they haven't haven't been raised on the petition for a year. Well, again, I for the same reason I think they are viable. Obviously, this court could, you know, reach a different result on that. But I think the court should address all three of those issues.  Finally, if we were to rule in your favor on this case, what would be the remedy at this time. Okay, so I think the remedy under these circumstances, given that it was That the trial was approaching very close to 35 years or certainly 35 years in 2021 Insider the Louisiana Supreme Court reversed and remanded for a new trial just after 10 years because they found that it would be, it would not be You know, worthwhile or efficient use of time in this particular case that there was not a race neutral reason provided by the by the prosecutor. In fact, it was very positive. But even if it wasn't that if that wasn't the case, the prosecutor in this case. Has passed away so It would, it would seem to serve no purpose to go back and remand for hearing And in addition, all those reasons that they've commonwealth provided were from a cold record. And so that's not something that they that they contradict what the prosecutor said. So those aren't even reasons that should be considered as race neutral. All right. Thank you very much. Good Catholic Mr Burke You, you mentioned earlier, the chart that the prosecutor had prepared For jury selection and I'm inclined to agree with you that that chart could be helpful to your case. But as you probably probably know in the In Taylor's brief for his direct appeal or I guess for his appeal to the Kentucky Supreme Court, to be more specific. He only has a couple of paragraphs in support of his Batson claim and the only factual circumstances that he references from the record are the facts that he was black and that the prosecutor had struck four of six of the black veneer persons. And so I guess I want to ask you If you have any authority for the proposition that that we are able to to grant the writ based on parts of the record that the petitioner chose not were failed to bring to the state courts attention. Okay, so Consider all relevant circumstances. And so Let's say I don't read Batson that way. Let's say that I would read Batson to mean that that the The defendant can invoke relevant circumstances and the court must must evaluate the claim based on all the relevant circumstances invoked by the By the defendant. I mean, I've read Batson and just in the interest of time. I don't really see an answer to my question. There's what I'm trying to Okay, so although I disagree with you. I think you also would have to look to what the Supreme Court has done in other cases. And so, for example, in Miller LV directly the court considered evidence that in fact they were criticized for that they considered evidence that was that had not been considered By the state court and they still consider that and granted habeas relief based on that. So this is not, you know, there is precedent for looking beyond it and and to stress this actually is not an instance here. The evidence actually was in the state court. It was in front of the Kentucky Supreme Court. It's been put in by the Commonwealth. It was in front of them. I mean, I understand, just to be precise. I understand it was part of the record. I understand the prosecutor actually Entered it into the record. But I guess what I'm skeptical about is the idea that once a Defendant invokes a very general kind of claim of a Batson claim and IAC claim, etc. That it then becomes the obligation of the state court to canvas the entire record, which could be enormous to to see if there is any Unreferenced evidence in there that supports the claim. I'm just trying to be candid with you. I'm not. I mean, I, and I'm just wondering, has, do you know, is there a case that says yes, they do. And yes, we can grant the writ on that basis. Okay, so a couple of things. Other than, again, Batson, which requires in my, from my reading, and I think a fair reading requires that. But beyond that, This was not just a, this is not really a general claim. This is a, you know, a claim of pattern in practice that the pattern of strikes of using The black jurors to remove 67% of the, I'm sorry, if the purpose strikes to remove 67% of the black jurors was what violated Batson. So, you know, I would, I would quibble a little bit with the idea that it was a just a general claim. And so, as part of that review I don't want to go over my time, but I'll leave it to our presiding judge. Thank you. I think it's time for Judge White. Judge White, you're muted. Okay, sorry. I did not hear the last or didn't catch the last of what you said when you were asked what the remedy is. Okay, so the remedy would be to grant the, would be to grant the writ And vacate the conviction and order a new trial based on Okay, that's what I thought. I just wanted to confirm that you weren't thinking anything else. Um, I have no further questions. Okay, Judge Strantz. Your new design. Sorry. I'm interested in the governing case law that has described dicta and we've done that in a variety of ways. And we have accepted as non dicta or as binding actions of courts. States statements that have included from our Supreme Court saying what has been elucidated and fortified by reasoning and illustration and moreover, the result of careful review of the entire matter. Our court has talked about adhering to statements that are sufficiently persuasive that are We've considered, we call them considered dictum that is entitled to considerable weight. Does the standard of what you call dicta alter your argument in this case. Okay, so in answer to that question. This, of course, is considered if it's if the court was to say that it's dicta that it would absolutely be considered dicta. Because the Kentucky Supreme Court explained exactly why you know it did what it did. So in that respect, if it is considered Dicta and considered dicta then again that is fully consistent with the with the with EDPA and what the Supreme Court precedent has pointed to for the obligation of federal courts to give Respect and deference to the state courts opinions. So in this case, if it even if it is dicta, it's considered dicta, it is reliable. There's, there's for You know, a couple of reasons beyond the fact that they talked about it at length. This was a case involving that both came from the Kentucky Supreme Court with the so this is not a lower court and then we're, we're presuming what the what the lower courts that we know it was both Opinions were from the Kentucky Supreme Court. And in fact, two of those judges were on the were on both the Taylor one and the Taylor to and when the in in the Supreme Court precedent court has said in None maker said that the presumption of the silence is a presumption that those that the court agrees. And so those two judges, including one of whom Just Wintersheimer wrote the Taylor one opinion by not saying by not disagreeing if he didn't believe that's what the reason was he didn't know that wasn't the reason he would have said so. He did not. So for all those reasons, this is a very reliable. Opinion provided by this report of why they denied it denied the Batson claim if any. I mean, if anything, it perhaps is more reliable than A lower court opinion which the US Supreme Court has said the federal court is required to look through. So absolutely. This is Taylor to should be considered by the by this court. Thank you. Thank you. I know Judge Donald is in the situation where she may not be able to ask a question, but if she wishes to. This is her chance. Yes. Thank you. Judge more Counselor. I just wanted to clarify your answer to judge reference question. Let me ask you about what would be the relief, you would Hope for and and was your answer, among other things, a new trial or what what exactly was the answer to that question. Yes, it would be the best Remedy here under the circumstances would be a new trial, given the fact that the prosecutors passed away and the cases 35 years old. That sending it back now and for that matter that the although the court did not reach the state court did not reach either two or three. In fact, the The prosecutor gave a race positive explanation when he said, I have no other rational reason or striking those after he's asked about race. So the, the, the Remedy should absolutely be to grant Mr. Taylor a trial free of discrimination in jury selection. Thank you. No further questions. Since Bush. Thank you, Mr. Burke. I just wanted to follow up on Judge Kepler just question regarding Using the what what allows us to look at the whole record, as opposed to just what was argued as far as the facts go to take to the first The first appeal to this Kentucky Supreme Court, and I'm assuming here that Taylor one. The first Kentucky Supreme Court decision is the operative decision. For our review not Taylor to so if that's if that's the framework is Miller L your authority. Do you have any other authority for why you would consider facts in the record that were not argued before the Kentucky Supreme Court. Now, all of those facts were in the that. I mean, okay, so the fact that there was a there are two black Defendants and to white victims. It's not something that the Kentucky Supreme Court really could not be aware of could not absolutely they should The juror chart that was not before the Supreme Court. Correct. That's right. But that's all those things. Well, In the statement of the prosecutor was also not before the Kentucky Supreme Court in the first Except, except that the trial transcript absolutely was in front of the screen. It wasn't argued. It wasn't argued by counsel. Correct. It wasn't argued. But again, My, my next question is with regard to The decision. The first decision there was reliance, I believe, at least the panel in our case relied upon an Eighth Circuit decision, the Montgomery case. Evidence that this was a reasonable application of Of law. How do you respond to that what it was. It was the Eighth Circuit case Montgomery just wrongly decided. Is that your argument. Well, we know that it was wrongly decided, Your Honor, because if you look at Montgomery, the standard that the Eighth Circuit used was actually contrary. It's, it's, it's ironic, but it's contrary to that. So what they said was that it did not rise for an inference because The, the prosecutor did not strike all black jurors or all the black jurors that could, which is absolutely not the standard of that to the Kentucky. So no, this court cannot use that the Montgomery case as authority because it's contrary to that. I've got one last question for you on remedy, you have indicated the only remedy is for a new trial. Are you conceding them that there, there could not be a remedy here of a fast and hearing before the district court. No, Your Honor. I'm not conceding anything I am saying that the best remedy that would make sense for both Mr. Taylor, given the fact that he's waited for 35 years for trial free of Discrimination and jury selection and for the for the economy of the court and the frankly would probably be futile. That is the best solution is to grant a new trial, but I am not suggesting that you would not accept whatever remedy. This court provides because it doesn't absolutely requires a remedy. And in this case, there was a violation. And so, yes, remedy is required. Thank you. Thank you, Judge Larson. I apologize. I just have a question about a statement that was made in I guess it's Taylor to so the Kentucky Supreme Court on The post conviction review where the court says that the trial court specifically noted that there was no evidence that African Americans were systematically excluded from the veneer. So what do we make of that. So, because it seems to me like That wasn't in place at the time of the trial. So there was never any Batson burden shifting thing that happened because it didn't exist. So prong three asks whether the trial judge in his discretion thought there was impermissible discrimination. Why don't we just jump to that. And why isn't this statement and answer to that question. Okay, so there are a few reasons that one that was not something that the trial court said during the trial. That was a questionnaire that he filled out that was after the trial. And so, in fact, after Batson the Kentucky had been decided. Number two, what the what the questionnaire asked was whether there was what he said is that there was no systemic Discrimination, as we know, the whole point of Batson the swing was to eliminate the need of having to prove that there was systemic discrimination, although I mean certainly there's a strong argument that given it came, you know, this prosecutors office came from It's the same as Batson that there is. But regardless, there is no obligation to prove that there was Systemic discrimination. So, but Sure, like a pattern at least so couldn't that go to, I mean, systemic within the trial. I guess I'm just trying to understand what this statement. Well, but, but we know that the trial court didn't say the trial court clearly he said on the record that the, you know, what the prosecutor is trying to do here or saying is they can strike under any Reason at all. And he said, I don't know. And then he allowed to pass. So in no way was he saying that based on that there was not a striking of individual jurors. Because Batson requires just one. In no way was he suggesting that there was a, that there was a He was making a finding that there was not discrimination based on, you know, applying Batson and the fact that Batson didn't come down, wasn't in place at the time has no has no relevance here because I understand that applies I'm sorry. I understand that it applies retroactively Right. And so Even if he even if he was saying that, then that would be contrary to Batson, but there's no reason to think that he was saying that it wasn't There wasn't a pattern of strikes here within the individual trial because, again, he was answering a questionnaire that the Kentucky Supreme Court had that where they went through and it was, it was actually You know that questionnaire was in place before Batson was decided was authoring before Batson was decided Thank you, Judge Malbandia I don't have anything. Thanks. Judge Riedler Hi, Mr. Burke. I might just follow up on a couple of questions that Judge Sutton asked you. One simple sort of straightforward bright line rules are handy things for lawyers and for counsel. So one rule would be that this inquiry ends at the end of direct review. And that we're not going to consider things that come up on collateral review. I was trying to understand the scope of your collateral review rule. Does this rule only apply if the state Supreme Court has not issued a merits decision if it's a, you know, blanket denial or a one line denial of review on direct appeal. Is that when your rule kicks in or Right, so I mean, and of course the US Supreme Court has addressed this too. So if it was, if it's just a, you know, a letter or, you know, a one page, then no. But if it is a if it is a reasoned state court opinion, the last reason state court opinion, then it applies. So, if there was a reason state court, if there's Supreme Court, if the Kentucky Supreme Court had issued a reasoned decision, then your collateral review rule doesn't work. We don't, we don't look Yes, that's right. Yes, yes. If, if the, if in Taylor one, the Kentucky Supreme Court had had issued a reasoned opinion, then absolutely. Then it would be, then your court would go by the by Taylor one. So this rule, this rule you want us to adopt is really unusual, quite an odd circumstance. I mean, suppose it doesn't happen in Kentucky, but suppose in a different state, the case goes to the Court of Appeals first and the Court of Appeals issues a reasoned decision and then the case goes to state Supreme Court and state Supreme Court just sends the letter saying affirmed or we're not reviewing. Does the prior state Court of Appeals decision then stand or does your collateral review rule trump the I mean, that, that is, that's, that's else, that's, that's, you are, I'm sorry, that is Wilson v. Sellers. If you have a, if you have a Supreme Court decision that does it, that is just a summary decision and then the lower court decided on the merits, then there's a look through to the, to the Court of Appeals opinion. So that is a, I mean, that's already decided law. Does every state in our circuit have this collateral review process and is it a requirement to go through it to secure federal habeas relief? Is it an exhaustion requirement to pursue the state collateral review process if it's available? It would be required if, I mean, there's no requirement to go through post-conviction, the post-conviction process, if the, if the, if the defendant wants to just, you know, bring his claims directly to habeas and waive whatever else. One reason you would do it, I think, you get a better, you get a second bite the apple and you get a better decision. That would be part of the decision making then for a defendant. That's sure. I mean, and as we know, what the Supreme Court has said is that because it's raised twice doesn't mean that it's defaulted and it doesn't prevent the state court from ruling on it. The state court, if the state court wants to make a reasoned opinion or decides a claim more than once, then it is certainly free to do so. But to do so. Thank you. Judge Murphy. Yes. Hi. I just wanted to ask a clarification point. So, Batson establishes the three-part test and the first part is a prima facie case. What is your, what is your understanding about whether that question, whether a defendant has met the prima facie burden, whether that question is one of fact or law? I take it, you understand it to be one of law. Is that why you're arguing that there was an unreasonable application under D1? Well, I mean, I think it would be, it would be potentially, it could be both, but yes, it is one of law. I mean, we know that the Supreme Court has issued this opinion and then they, in Batson, then they followed up in Johnson and said that this is, you know, it's not intended to be an onerous test. And then they also talked about once that the, that it's been, there's been an answer provided, then it, then it's considered moot and then it moves on. So, yes, this, this is a circumstance where the court would consider the, whether or not it satisfied the inference of discrimination based on the, you know, the evidence that was in the state court record. Yeah, the reason I'm asking is some other circuit courts seem to suggest it might be a fact question and it would actually implicate D2. I don't know that it actually makes a difference. They both require unreasonable application of either the law or the facts. But here, it seems like both parties are arguing under the implicit assumption that it is one of law. And I just wanted to clarify that we don't really have to resolve that because both parties. Right. I mean, so for step three, when the, when the trial court makes the decision, whether or not they find that it was that if they believe the prosecutor, if they thought it was a pretext, we know that that is a, you know, a factual determination. But I am not aware of any rulings by the Supreme Court that says the same for the step one. Okay. And just real quickly, I wonder, I also, I was just curious what circuits have been saying on how you satisfy the prima facie case. And lots of circuits have statements to the effect of showing that a party used its authorized franctory strikes against jurors of one race does not standing alone establish a prima facie case of discrimination. And I could read the relevant sentence in Taylor, too, to essentially be saying just that, that in addition to the exclusion of minority members, you have to show other things. If I read it that way, why would it be contrary to Batson because other circuits have said the same thing? Okay, because, but they don't, because so all the cases that were cited in the majority panel, if you look at what they, the panel decision, if you look at what the court did, of course, and all three of those did, they actually considered whether or not it satisfied the prima facie standard and then said, no, it did, and there wasn't any reasonable, any other relevant evidence presented. In this particular case, the Kentucky Supreme Court never even looked at that. A plain reading that also requires to establish a prima facie case to showing up other relevant circumstances. We know definitively that is not what Batson v. Kentucky requires. That is absolutely contrary to it because the, the U.S. Supreme Court has said so. They said so in Batson itself when they didn't require other relevant evidence. They, they remanded for step two based strictly on the fact that the, of the jurors that were stricken by the prosecutor. And we also know it from the, and I forget where I was going with my, my thoughts. My time is up anyway, so we'll end there. Okay. Mr. Meredith, it is your turn. May it please the court. Good afternoon. My name is Chad Meredith, and I represent the warden in this matter. In 1984, Victor Taylor kidnapped two teenage boys at gunpoint. Their names were Richard Stevenson and Scott Nelson. Taylor took them to an abandoned lot, bound and gagged them, partially stripped them of their clothes, raped one of them, and then shot both of them in the temple as they were lying helplessly on the ground. He subsequently bragged about the murders to multiple people. The evidence of Taylor's guilt is overwhelming. There is no credible argument that he is innocent. Yet if habeas relief is granted in this nearly 40-year-old case, the result might be that Victor Taylor goes free. This unthinkable outcome should not and cannot be allowed. Victor Taylor is not entitled to habeas relief. In order to prevail here, he must overcome three hurdles. First, he must convince you to take the unprecedented step of applying the Wilson v. Sellers look-through analysis to a future opinion, Taylor 2, instead of looking backward to a previous lower court opinion. Second, he must convince you that Taylor 2 misstated the Batson standard. And third, he must convince you that he is correct that there was a pattern of discrimination in this case. He cannot overcome any of these hurdles, much less all three. First, the Wilson v. Sellers look-through analysis does not apply here. This case is governed by Harrington v. Richter, not Wilson. Taylor 1 is the only disposition from a Kentucky state court that actually decided the Batson claim, and it did so without any reasoning. Given this fact, Richter applies. Under Richter, habeas relief must be denied because the record in this case supports the theories on which the Kentucky Supreme Court could have reasonably denied the Batson claim consistent with clearly established federal law. It also makes no sense to apply Wilson's look-through analysis in this context. Wilson's look-through analysis applies when there is a prior reasoned decision from a lower court, not dicta in a future opinion. The Supreme Court said exactly this just three months ago in Shin v. Kayer. The petitioner has not identified a single forward look-through case, and we're not aware of any. And adopting the petitioner's argument to focus solely on the reasoning in Taylor 2 would require this court to overrule its existing precedents like Holland v. Rivard, which correctly focus a habeas court's attention on the state court's decision rather than its reasoning. As Justice Scalia observed in his concurrence in Johnson v. Williams, what matters or what is a court of deference is not the state court's reasoning but the state court's judgment, which is presumed to be supported by whatever valid support was available. But even if the court were to look to Taylor 2, the petitioner still can't win. Taylor 2 simply did not articulate the Batson standard in a way that was contrary to clearly established federal law. The petitioner's argument in this regard – excuse me, the petitioner's argument to the contrary hinges on the supposition that there was a pattern of discrimination here and that Taylor 2 held that a prima facie case under Batson requires proof of discrimination over and above such a pattern. Taylor 2 said no such thing. Just as importantly, the petitioner's argument is built on the unproven assumption that there is a pattern of discrimination here. There is no pattern. In fact, the record disproves that. The only thing the petitioner has pointed to is the fact that four out of six African-American jury veneer members were struck by the prosecution and a few ambiguous statements from the prosecutor and the trial judge. The prosecutor absolutely did not say that he had no other rational reason for the strikes other than race discrimination, and four out of six is not a pattern. It is a mere ratio. Without any additional evidence, there is no way to know that this is a pattern. A pattern is something that predictably repeats itself. Four out of six is a mere ratio. And on top of this, there was abundant evidence of non-discrimination. For instance, the judge made a specific finding that there was no systemic discrimination. Moreover, and this is a very important point that did not receive attention in briefing, but the defense actually moved to strike three of the six African-American jury veneer members for cause. And the prosecution opposed each one of those motions. If the prosecution wanted to exclude racial minority members from the jury, the easy thing to do would have been to acquiesce in those motions to strike them for cause. But the prosecutor did not do that. The prosecutor fought to keep those African-American members on the jury veneer. Moreover, the prosecutor did not question racial minority members more aggressively than Caucasian members, and the prosecutor did not use all of his peremptory strikes. Your Honor, habeas relief exists to guard against extreme malfunctions in the state criminal justice systems. It protects those few individuals whom society has grievously wronged. Victor Taylor is not among those individuals. The only victims here are Richard Stevenson and Scott Nelson, the boys that Victor Taylor murdered. Their murderer is not entitled to habeas relief. I'll see the rest of my time to the court. Thank you. Judge Batchelder. Again, I do not have questions. Okay, it is my turn. I'm curious about your statement, Counselor, that four out of six is not a pattern. Would four out of four be a pattern? I think, Judge Moore, I think four out of four would look a lot more like a pattern. Four out of four is more akin to what we've seen in other cases. So what makes something a pattern? Well, I think that a pattern is something that predictably repeats itself. Four out of six, essentially with such a small sample size, is not necessarily a pattern. It's a ratio. Four out of four is 100%. That looks a little more like a pattern. But I think what's important So you could have a pattern in a particular case. It's just your question is whether four out of six versus four out of four. Well, I think that's right, Judge. You know, Batson instructs us to look at the relevant circumstances. I think it's really kind of a totality of the circumstances test. You're not to look at any one particular thing in a vacuum. If there is proof of a pattern, Batson says that can be sufficient. But in general, you're to look at all of the circumstances. And four out of six, for instance, might look, if you strike four African-American members of the jury veneer, and you have a lot more peremptory strikes to use, and you don't strike more African-American members of the jury veneer, that looks a lot different than if you use as many peremptory strikes as you can to strike as many African-Americans as you can. Thank you. So one thing that I'm curious about is if we get to step two of Batson, the rationale that's given by the prosecutor, in accordance with case law, the Commonwealth has no other rational reason. If I strike all, it then becomes objectionable under the cases from, as I understand, California. The prosecutor is clearly saying the Commonwealth has no other rational reason. What was the rational reason that it had for striking four out of six? Well, Judge Moore, respectfully, I disagree with that assessment of that quote. I don't think that that's what the prosecutor is saying. I don't think he's saying that I have... I was quoting it. Well, I don't think he's saying I have no reason other than race discrimination. My question is, what is his other rational reason? Well, Judge, if I could back up just a second, I think the key part of that quote is when he says, in accordance with the case law, I think he is describing his understanding of the case law. And as I read that, I think what he is saying is that he understands the case law to be such that if all members of a racial minority group are struck, then there is a conclusive, irrebuttable presumption as a matter of law that he is engaging group bias and is discriminated against those people on the basis of their race. But isn't he saying that he could use race to strike four out of six? It's just that he can't use race to strike four out of four. No, Your Honor, I don't think that's what... I don't read him to be saying that at all. I don't think that's what he's saying. I think he's explaining his understanding of the California case law, the Wheeler case, and I think that he is saying that he's... I think he's explaining his understanding is that he is presumed as a matter of law to be discriminating if he strikes them all and then will not even have a chance to provide a rational basis. But because he did provide... Because he did not strike all African-Americans, then he has an opportunity to prove a non-discriminatory reason.  Thank you. Our time is up and we should move to Judge Clay. Counsel, with regard to the confrontation clause issue, in terms of your current position there, do you have anything to add or expand upon the way you briefed that issue in the course below? Judge Clay, I would say three things in response to that. First, I'd say the petitioner did not ask for a re-hearing on this issue. Second, I'd say the panel unanimously rejected this claim. And third, the panel was correct. Regardless of the merits, this claim is obviously... There's obviously harmless error here, even if there was an error. I don't think there was, but the evidence of guilt is so overwhelming here that there's no way this statement could have ever meant anything. But harmless error. The statement was cumulative and was corroborated by other evidence and testimony. So I think worst-case scenario for the warden, it's simply harmless error. Well, even though you say re-hearing wasn't asked for or pursued by the petitioner on this issue, under the rules of our circuit, as I understand them, I know I can be wrong about these things, but we're not one of the surges that will unblock a particular issue from a case. When we unblock a case, the entire opinion is vacated. So under the rules, as I understand, the entire case is before us again. And if you don't have anything to say about the substantive issue, that's fine. But from my perspective, and my colleagues may not agree, but to the extent that that issue may be before us, do you have anything on the merits to add to our consideration of that issue? I don't know that I have anything to add other than what's in the briefing below and the fact that I would adopt the panel majority's opinion, which was unanimous. I mean, I don't think admitting the Wade testimony was an error. But even if it was, this is an instance where the evidence is so overwhelming in favor of Mr. Taylor's guilt that it cannot possibly be anything other than harmless error. The evidence was cumulative. It was corroborated by other circumstances. And as the panel opinion pointed out, the testimony didn't even address the sodomy issue, and it wouldn't have even fit into the narrative. So it's not even clear that the testimony had a whole lot of weight in the jury's eyes. So at worst, it's harmless error, if it is even error. Thank you very much. I don't have anything further to add. Judge Gibbons. Mr. Meredith, when you referred to the state trial judge making a specific finding of no systemic exclusion, were you referring to the same questionnaire that Judge Larson asked about? I believe that's correct, Judge Gibbons. Well, that question does not go to the issue in this case. That is my understanding. Batson deals with jury selection in a particular case. And the systemic exclusion from a veneer relates to whether African-Americans or particular other groups are represented in the total pool of jurors, not the particular jurors who are called into the jury box to be interrogated. Isn't that correct? Well, Judge Gibbons, I will agree with you that I don't think this issue is dispositive. I think that I'm suggesting that it has absolutely nothing to do with the resolution of this case because it's two different things. Do you disagree with that? I do disagree slightly, Judge Gibbons, and I would point out that the questionnaire did not necessarily ask whether there was evidence that racial minority members were excluded from the jury veneer. It asked whether they were excluded from the jury. And the answer was no. So I think that it goes much further than just... Do you think the question is more ambiguous than was previously suggested? Correct, Judge Gibbons. I think the question and the response given by the trial judge can be read as a finding that there was no discrimination in the selection of this particular jury, not just the jury veneer. All right. I have nothing further. Judge Spadafore? Just a quick question. We keep coming back to the confrontation clause argument. And, you know, my understanding, when the panel decision is vacated, everything's on the table. Sometimes the in-bank court decides everything. Sometimes it refers some issues to the panel. You may not be familiar with our Davenport decision where we had some disagreement, including at the in-bank stage, about exactly how the Brecht harmless air standard works. But I think that there's no reason we can't resolve that problem we're having within the court in this case if the in-bank court decides to look at the confrontation clause issue. I think that's right, Judge. I think that's right. I'm not sure that there's a need to look at the confrontation clause. The petitioner moved for en banc rehearing on this one particular issue, and he was granted that relief. So I'm not sure he can shoestring all of his other issues onto this or bootstrap them onto this. But I think you're right, Judge. So here's a part of Baxton that I'm wondering if I'm just not understanding. And it's also possible I have the facts wrong. But, you know, one way of looking at what happened is not just the percentage of strikes, the four of six, but to look at, you know, there's not a challenge to the jury veneer, which, as I understand it, was six of 38 were African American. That's just over 15%. If you then have 15 members of the jury left, 12 jurors, three alternates, it's not clear who was going where. But if you focus on what the prosecutor did, if you look at 15, two of 15 would be over 13%. That's 13 versus 15. If the two had stayed on the 12, it would have been over 16%. That's actually better than the veneer. So is that just like a wrongheaded inquiry in whether there's a Baxton violation? Or, I mean, I just would have thought you wouldn't have too many Baxton violations where the jury veneer percentages ended up so close to either the percentage of 15 or the percentage of 12. Am I missing something? No, you're exactly right, Judge. And I think one of the problems that I've had in this case is I think the petitioner is trying to hold his own counsel's periphery strikes against the warden. You're exactly correct that had the Commonwealth's periphery strikes, had the racial makeup of the jury veneer remained steady after the Commonwealth's periphery strikes, you're exactly correct. There would have been two African Americans on the jury, which would have been roughly two out of 15, like you said, roughly 13%. And then if there had been two out of 12, it would have been over 16%. But the only reason we went down to one is because the defense counsel struck an additional African American member of the jury. Well, do the cases, do you know how those percentages line up with the cases? Are there cases that say you've got to have a bigger discrepancy between the veneer and the makeup of the jury? Or do the cases say, no, we don't focus on that comparison? Well, I think in general, the cases don't necessarily look to any particular ratio or numbers. But I think that the cases all stand for the proposition that you cannot hold against the prosecution what the defense does. And you just have to evaluate the prosecution's conduct. And so to the extent that cases look at percentages and ratios, I think that would cut in our favor here. Because the prosecutor did not strike racial minority members in such a way as to create a disparity between the actual number of individuals left on the jury veneer and those who were initially on it. Thank you. Judge Cook? I pass. Thank you. Judge Griffin? Yes, Mr. Meredith, you started out your argument by saying that based upon the facts of the case, I guess, there's no way the defendant should be entitled to habeas. I'm not quite sure what you mean by that, but do you recognize that Batson is a structural error and that Batson error is not subject to harmless error analysis? I do, Judge Griffin. And what I mean by that is when you look at the actual facts in the record and you look at the arguments and theories presented to the Kentucky Supreme Court, which is what the Supreme Court instructs us to do, it's very clear that there was no discrimination here. That's not how you started out. You started out by citing what the facts were, and you said that no defendant under these facts should get habeas. Well, but you can see that if racial discrimination exists in the selection of his jury, that that's a structural error entitling him to a new trial, irrespective of the facts. Isn't that right? Well, I know the Sixth Circuit has held that this is structural error. In 2017, the Supreme Court held in Weaver – the Supreme Court didn't go so far in Weaver v. Massachusetts as to expressly say it's structural error. In fact, it said that the Supreme Court's never gone that far. But I concede that you're exactly correct, Judge Griffin, that – Now, the pattern is from Swain, is it not, and not from Batson? Isn't that what Batson overruled, that you no longer have to establish a pattern that continued in the present case? Well, yes and no. Swain required – you're correct that Swain required proof of an ongoing pattern of systemic discrimination. And Batson does not, right? Batson does not. Batson requires proof of discrimination in that case. Batson does not require a pattern, right? Batson does not require a pattern of systemic discrimination. Batson just requires proof of discrimination in your case. Batson says that can be – You're a member of a protected race, and they have excluded members of your race from your jury. And therefore, you go to step two, and the prosecutor has to come up with a neutral reason for the action. And here, the prosecutor said, I have no other rational reasons. So there is no – there's no rebuttal to step two. Judge Griffin, I disagree with your assessment of the steps. I don't think you get to step two just by the mere fact that the prosecutor struck racial minority members of the jury veneer. I think Batson says that in addition to striking racial minority members, there must be other relevant circumstances that give rise to an inference of discrimination. The very fact of striking racial minority members does not itself give rise to an inference of discrimination. Final question before I run out of time. You say there's no authority that you can look through to a future decision of the same court. Is there any authority that says you cannot? Well, I think there's plenty of authority, Judge, because – Tell me what authority that you cite that says you cannot look through to a future decision of the same court and the same defendant in the same case. Well, the text of 2254D refers you to decisions, meaning decisions on the merits, decisions that actually adjudicate the issue. So that's all you're looking at. Here, Taylor 2, if you've got a future decision that actually adjudicates the merits, that's what you're looking to. But Taylor 2 did not adjudicate the merits. Taylor 2 is not a decision on the Batson issue. Taylor 2 is simply dicta. Okay. To answer my question, you have no authority that you cannot look through to a future decision of the same court? Well, we have the text of the statute itself, 2254D. Text is all I got. Well, we've got text, and we've also got the manner in which courts have applied the Wilson v. Sellers look-through. The petitioner has not identified – look, Wilson itself, the very text of Wilson says that you're not going to look forward. Wilson says that you're going to – Okay. Tell me where it says you cannot look forward. Sure. Wilson says, quote, we hold that the federal court should look through the unexplained decision to the last related state court decision that does provide a relevant rationale. It should, quote, it should then presume that the unexplained decision adopted the same reasoning. Well, that necessarily means that you're looking backward. You can't look forward because you cannot adopt a decision that has not occurred yet, that has not been issued yet. Does it make sense? Does it make any rational sense why you cannot look forward when it's the same court that explains a prior decision? Tell me why it makes sense not to consider it. I think it makes no sense at all to look forward because the logic behind the look-through analysis is that the last state court to address the issue adopted a lower court's opinion. You can't adopt – and that's exactly – that's expressly what Wilson says. You cannot adopt a future opinion that hasn't been issued yet. For instance, you know, this kind of goes to Judge Sutton's line of questioning earlier. You know, what if tomorrow the Kentucky Supreme Court issues an opinion that says we hereby repudiate Taylor II and withdraw that opinion? Well, where are we then? I mean, there's no rhyme or reason to how this analysis is going to play out if we're looking forward. And every time – it's commonplace for courts to characterize opinions and say, in case X, we did this and such. If that is sufficient to give rise to a look-through analysis, then there's going to be no end to habeas litigation. Thank you. I have no further questions. Thank you. Judge Kaffrich. Okay. Mr. Meredith, I guess just a quick factual question. You said earlier that the defense had sought to strike for cause three African-American veneer persons. And I was just wondering, what are the names of those people? Judge, it's Eleanor Fisher, Richard Gooch, and Joyce Booker. Now, Gooch got struck for – by the prosecution, is that right? That's correct. All right. What happened to the other two eventually? So, Eleanor Fisher was on the jury, and Mrs. Booker was struck with a peremptory strike by the defense. Okay. Okay. That's all I have. Thank you. Judge White. Just a follow-up with one of Judge Sutton's questions. Are you saying that the prosecution could strike all the African-American jurors that get into the box as long as there are enough jurors left? Or let me put it this way. Could use all the challenges to challenge African-American jurors as long as what's left is proportionate to the population? Well, I'm not sure I understand your question, Judge White, but I think the answer is not necessarily. I mean, this is – I think the Batson analysis is a totality of the circumstances analysis. You're trying to prove discrimination. And discrimination is an issue of subjective intent. And so to do that, you have to look at the totality of the circumstances, look at everything that's going on here. And when you look at the facts here, it's pretty clear that there was no discrimination. There were lots of things the prosecutor would have done that he didn't do if he wanted to exclude African-Americans from this jury pool. For instance, he would not have contested the motions to strike three African-Americans for cause, but he did. So, in fact, he was fighting to keep African-Americans on the jury veneer. And the fact that he opposed that motion is actually the only reason why there was even a single African-American on the jury. Had he acquiesced in those motions, all the African-American members would have been struck. So you can see it's not automatic. I mean, just because you're left with enough people to resemble the population doesn't mean there hasn't been a Batson violation. No, that's right. I agree with that. I think it's evidence that helps demonstrate there was no discrimination. But, you know, for instance, if the prosecutor admits, for instance, that he discriminated against one person on the basis of race, regardless of the percentage of individuals on the jury, I think that that probably is enough for a Batson violation. But we don't have that here. The petitioner has spoken a lot about the statement from the prosecutor. I have a different question now. So if Swain was the governing law at the time of the trial, why wasn't it ineffective for counsel not to make the record that counsel could have made regarding the systematic exclusion? Well, I think a couple of reasons. Number one, I don't think the record he established or the record he even tried to establish in his 1142 collateral proceeding came close to establishing a record for a Swain claim. And second, you know, a criminal defendant is not guaranteed a lawyer who is a robot who, you know, goes down every single rabbit hole pursuing a defense for him. Lawyers are human beings with limited time and resources, and he had to make the best strategic calls that he could. And the fact that he maybe didn't think that using his time building a record on a Swain claim when there wasn't really a lot of strong evidence of systemic discrimination, much less discrimination in this particular case, is eminently reasonable. And I don't think it would have affected the outcome in any way at all. I don't see a prejudice. Thank you. I remain a bit concerned about attempting to resolve this case based on a disagreement over the party's view of what constitutes dicta. I'm thinking, I spoke earlier to your opposing counsel about some of the other case law that governs what's dicta. We've said in our Gillespie case in the Sixth Circuit, in addition to the Supreme Court, that where a matter is argued before the court and the court's opinion passes on the issue, it's not dicta. Explain to me why you think the presence or absence of dicta is key to this case. Well, Judge Strantz, again, I would point you to the text of Section 2254, which points the habeas court's attention to a, quote, decision from a state court. Taylor II is not a decision on the Batson issue. It didn't decide anything. Taylor II was addressing the Swain claim. And in addressing the Swain claim, Taylor II said, look, you can't even raise this because it's procedurally defaulted. But even if it weren't, your Swain claim would fail for the same reason that your Batson claim failed. As the panel majority noted, that was just syllogistic reasoning. So Taylor II didn't decide a single thing. It didn't adjudicate anything pertaining to Batson. Let me ask you, counsel, did it review an issue, hear argument on an issue, and address the issue? Judge Tranz, I think the answer is no, because the issue in front of Taylor II was Swain, not Batson. Batson was not argued there. Batson was argued in Taylor I. And so 2254 and the case law interpreting it tell us that we look to Taylor I, because Taylor I is the actual decision that adjudicates the merits of the Batson claim. And it is the only decision from a Kentucky court that adjudicates the merits of that claim. I'm struggling with this also in light of what your opposing counsel says about how AEDPA functions and about how the information from this court is important for consideration for the reasons that he articulated. It just seems to me that it's a thin reed for you to rely on. It's the basis of this claim where you have a dispute between the parties on whether this even constitutes dicta. And perhaps it's because I had some concerns about the concept or the doctrine itself. We all recognize that these dicta arguments are damaging to collegiality within a court. And they create problems as well for one of the very essences of our job, which is to provide to the public what the law is so that they can conform their behavior to it. So in light of what your opposing counsel says about this not being dicta or even if it is, it must be considered in this context, why would we decide this on your narrowly argued dicta analysis? Well, a number of reasons, Judge Strange. First is that AEDPA was passed precisely for the reason of showing greater deference and greater respect for state courts. Congress wanted to get the federal courts out of the business of being paternalistic and tutelary towards state courts. And under AEDPA, federal courts are to give state courts the benefit of the doubt. The Kentucky Supreme Court, because it's the court of last resort, could have addressed the merits of Batson had it wanted to in Taylor 2, but it didn't. It didn't do so. It only addressed the merits of the Batson claim in Taylor 1. And 2254, regardless of whether any of this is dicta or not dicta, 2254 tells us that we're to look to a decision from a state court adjudicating the claim. I think our time is up. Thank you. Thank you, Judge. Thank you. Judge Donald, do you have a question? Yes. Mr. Meredith, are you able to hear me? Yes, Judge Donald. So we've been talking a lot about the conduct of the defense counsel and the conduct of the prosecutor. But doesn't Batson really govern the conduct of the prosecutor? And if that's the case, it sets a pretty low bar for the prosecutor. It says that they've got to, in the face of an objection, articulate a non-discriminatory reason for those challenges. Tell me what the non-discriminatory reasons were that were articulated for each of those challenges that the prosecutor made in this case for the four African-Americans. Well, first, Judge, I would disagree slightly because I think that the prosecutor only has an obligation to articulate those reasons once the defense has established a prima facie case of discrimination. I don't think that was ever established here. When you look at the entire record here, the evidence simply does not demonstrate a prima facie case of discrimination. All you've got is four out of six, and that's not a pattern. But if you want to talk about the non-race, the race-neutral reasons. Now, keep in mind that I didn't use the word pattern, and the judge didn't overrule the defense counsel's objection and say you haven't established a prima facie case.  Sure. Well, the prosecutor didn't articulate those reasons in the record, and the prosecutor is now deceased. But from the record, we can see pretty clearly what those reasons were. The prosecutor was trying to find... Okay, Mr. Merida, let me just say I'm going to reject that because I wanted you to point to what is clearly absent, the prosecutor's articulated reasons. And, you know, the law says they don't have to be plausible, they don't have to be detailed, they just have to be stated. And you've admitted those haven't been stated. And so now we're looking all these years later, and we're going back to speculate and interpret those reasons, and that seems problematic. So you may finish your statement, but that's the end of my questions. But you may finish your statement. Sure, Judge. I think the reasons are obvious from the record. The prosecutor was looking for people who were reliably employed and had a higher level of education. So every single African-American that he struck either was unemployed or had only a high school education or both, or in the case of the one person who doesn't necessarily fit both of those criteria, Mr. Cowan, is because Mr. Cowan expressed opposition to the death penalty during Gwadir. I mean there are obvious reasons, obvious nondiscriminatory reasons in the record why this occurred. And the prosecutor, the prosecutor absolutely did not say that he was striking individuals on the basis of race. His statement, as I interpret it, was a statement as to his understanding of the law on hair cross section challenges. Thank you. Judge Bush. Yes, Mr. Meredith, I'd like to ask you a question about or some questions about a case called Harris v. Haberlin. Are you familiar with that case? Is that from the Sixth Circuit, Judge Bush? Yes, and this was a case where habeas was granted, where there had been a videotape that was discovered between the trial and the state court. There was a videotape of the prosecutor making statements to another prosecutor that was discovered between the trial decision and the Supreme Court ruling. Are you familiar with that case? Judge, I'm not particularly familiar with that case, but I'm happy to answer your question. A couple of things about that case. One, in that case, there was a remedy order of a vaccine hearing by the district court. Rather than ordering a new trial, the remedy order was that the district court, I think it was Judge Haber, would go ahead and do the vaccine hearing because it was never performed. I think it was performed, but because they didn't have the videotape, it wasn't considered as part of the vaccine hearing. My question to you is, if we did grant habeas, is that an alternative here to have Judge Reeds, as the district judge, do a vaccine hearing to determine whether or not the standard has been met for a violation of vaccine? Well, Judge, I think theoretically you could do that. I don't know that it makes a lot of sense to do that. I'm not sure that's an efficient use of judicial resources because I think this court can look at the record and determine for itself that there was no discrimination. The emphasis of that Harris case, and I'm sorry we don't have it in front of us here, but the emphasis seemed to be that the trial court needs to make the factual findings, not in the appellate court, as to the requirements of vaccine. And the problem here is we never had a trial court do a vaccine hearing. Judge McAnulty never did it because he didn't know that. I think vaccine came down the day the verdict came down. So I guess what I'm struggling with is, is there a proper remedy here, really, to just go ahead and have a vaccine hearing? Granted, we don't have the prosecutor with us, but we could have circumstantial evidence as to the factors of vaccine and just go ahead and have it decided by Judge Reeds. Well, I guess, Judge, theoretically, you could maybe do that. I'm not sure there would be a lot of practical problems with that because, you know, you're correct that often when it comes to evidentiary hearings, you need to have those in the trial court in the first instance. But I'm not really sure what the trial court would hear in this case. The prosecutor and the trial judge are both deceased. It's going to be very difficult to create any record. I mean, all the evidence, all the evidence you're arguing to us, why can't it be presented to the district court and let a district court make the determination under the vaccine? Well, I guess they could, Judge Bush, but I think this court can do that just as well because the transcripts, the record exists as it is. And this court, I think, can look at that record and see just as well as Judge Reeds could. Look, it's the petitioner's burden to prove discrimination here. The warden doesn't have to disprove discrimination. The warden doesn't have a burden to prove. It is the petitioner's burden, and the petitioner simply has not met that burden. You know, he's got to prove discrimination, and he can't do it. All that they presented to the Kentucky Supreme Court, I think this goes maybe to maybe Judge Ketledge's questions. All that he presented to the Supreme Court essentially was that he was African American and that four out of six African Americans were struck. Both Wilson v. Sellers and Harrington v. Richter talk about the, quote, arguments and theories that were presented. Parties present arguments and theories. So I think the court's attention should really be directed to what did the petitioner argue in his direct appeal to the Kentucky Supreme Court. Based on that and coupled with the record here, I just don't think there's any reason to have a remand for an evidentiary hearing because this court can see clearly that there's no basis for any finding of discrimination here. Thank you. Judge Larson. I have no questions. Judge Galbandio. Good afternoon, Mr. Meredith. I've got a question. I'm curious about the record. So you talked about how the record reflects that the prosecutor wanted to not have unemployed people or wanted highly educated people, whatever. Is that in the record that was in front of the Taylor One court, or is that something that was developed in the 1142 hearing? Well, those facts are all in the record. It was in the record at the time of the direct appeal, but nobody argued that at the time of the direct appeal. Okay, so what about this questionnaire about how there's no discrimination? Well, we can debate what it means, but was that from the 1142 hearing in support of the Swain claim, or is that something that was in the Taylor One record? Judge Galbandio, that was in the Taylor One record. That was a finding that the trial judge, the judge actually tried the case made after the verdict for the purposes of the direct appeal. For the purposes of some administrative requirement or because in the course of rejecting the Swain claim? No, I think it's part of an administrative requirement that was at that time imposed and maybe still imposed on all trial judges when there's a death penalty. Okay, so it went to that case specifically? That's the argument? It went to Taylor's case. It wasn't some thing about Jefferson County. It was about this case. That's right, Judge. That's right. Okay. Okay, and then what do you think? So then this goes back to Judge Bush's question. So what is the remedy? If we were to grant relief here, what would the remedy be? Go back to state court for a Batson hearing? Or do you agree that it would just be a new trial at this point? Well, you know, I think that Judge Bush's suggestion of a hearing in district court is preferable to just outright granting the writ and going back to state court. But if the court were to grant the writ and go back to state court, I think the remedy is to have the Batson hearing. Okay. Thank you. Judge Raidler? I have no questions. And Judge Murphy? Yeah, I would just briefly like to talk about the Taylor 1 versus Taylor 2 issue and do it through the guise of the confrontation clause claim. I'm curious, what is the state's position on which of the three Taylor opinions from the Kentucky Supreme Court is the decision on the merits for purposes of Crawford? And why? Judge Murphy, I think the Commonwealth or the warden has consistently taken the position that the Taylor 3 is ‑‑ I'm sorry. I'm being corrected. I think the warden's position has been that Taylor 1 is the operative opinion. So the Supreme Court has said even if Teague bars federal habeas on some new claim, state courts are allowed to provide greater protection than the federal courts allow. So I guess why wouldn't we say that that's what was going on when they accepted Crawford and said it overruled, therefore there was a constitutional violation, and therefore we have to engage in harmless error analysis? I think that's right, Judge. I think that's right. But then if that's right, then why isn't Taylor 2 doing the same thing for purposes of Batson? Because Taylor 2 is not a decision on the merits. Taylor 2 didn't even really address the Batson claim. Taylor 2 was directed at the Swain claim, and it just referenced the Batson claim as part of a syllogy to explain why the Swain claim could not prevail on the merits. So I guess that clarifies, I suppose, that the critical point then is just that Taylor 2 was dicked out, but you would concede that if they actually decided to reassess the claim because they thought all this new evidence was important just for purposes of protecting constitutional rights, they decided to readdress it, they could, and then that would be the controlling decision? Yeah, I think that's right, Judge. I think the Kentucky Supreme Court, if it wanted to, could have addressed the Batson claim on the merits and rendered another decision in Taylor 2, but it didn't do that. And so given that AEDPA is directed towards showing a greater level of respect to state courts, I think it would be inappropriate to disregard the Kentucky Supreme Court's decision not to do that. They made a very deliberate decision not to address Batson on the merits again. Batson was only decided on the merits one time, that was in Taylor 1, and to disregard that would be, I think, contrary to AEDPA and the level of deference that is owed to state courts. And just one last point real quick. Taylor 2 had – perhaps it was alternative holdings. It was first a procedural default and then this extra analysis. How does the procedural default play into this, whether Taylor 1 versus Taylor 2? I think we would have to respect the procedural default point as well. Absolutely. I completely agree with that. And how does that – that wouldn't suggest the entire Batson claim is forfeited, though, would it? No, the Batson claim is not forfeited because it was litigated on direct appeal. I just think that Taylor 2, as far as Batson goes, really is irrelevant. Okay, thank you. Thank you. And I think now it is Mr. Burke's time for his rebuttal. Your mute is on. Mr. Burke, your mute is on. Sorry about that. That's okay. Two minutes. First of all, the Attorney General conceded that there was a Swain claim that was decided on the merits by the Kentucky Supreme Court in Taylor 2, which is to say it was presented as and is an Equal Protection Clause claim. Now, as we all know, including the Kentucky Supreme Court, Swain v. Alabama had been overruled by the time the court decided that. It had long been overruled. So necessarily they decided it under Batson. Necessarily they decided that Equal Protection Claim was a Batson claim. There was no such thing as a Swain claim. It was decided on the merits. It's not dicta. It is on the merits, and this court should look to Taylor 2 as well as Taylor 1. But even if we're not going to see that, one other thing to point to is that it absolutely was not based on a procedural default or a state rule. As we know from Caldwell v. Mississippi, the Supreme Court said if it's unclear, if there's a discussion about federal law and there's a discussion about a procedural default state court, then there must be a clear and expressed statement by the state court that it was not addressing the federal claim, and that is absolutely not present in Taylor 2. So it was decided on the merits, and this court needs to look to Taylor 2. Secondly, Richter and Wilson v. Sellers, the Attorney General says that Harington v. Richter applies. In Sellers, the court said that Richter did not apply because there was a state court opinion that existed in Wilson that did not exist in Richter. So the idea that we could apply it here where there's also a recent state court opinion is contrary to Wilson v. Sellers. This court must look to Taylor 2. Third, and I had gotten this point before, what the Taylor court said, Taylor 2 said, Batson also requires to establish prime safe space under relevant circumstances. Batson and Johnson says that it is permissive. In fact, they went on to say it's not even required to prove a pattern of strikes. It is a permissive strike, which is obvious from Batson 1, or I'm sorry, from Batson, where there was no pattern. It was simply, or no other relevant circumstances. It was all of these jurors were struck, and that was enough. So the idea that there's no question, if you read what Taylor 2 says, that it was a contrary to Savitt, and that being the case, then this court should review it de novo. And based on that, they should also look at all of the evidence that was presented in Taylor 2, including the prosecutor's manual in which it instructs prosecutors to strike jurors, including the fact that Batson 1 and Griffiths were the same, very same prosecutor's office, including a trial court judge who testified that, in fact, she has experienced that the prosecutor's office in Jefferson County was striking jurors based on their race because they were black. And so for all of those reasons, this court should, A, grant Mr. Taylor's habeas petition, and B, the remedy should be to remand for a new trial. He's waited for 35 years for a trial free of discrimination in jury selection. It is time. Thank you very much. Thank you both for your argument. And Mr. Burke, I believe that you're appointed pursuant to the Criminal Justice Act, and we thank you for your service to the pursuit of justice and to your client. And this concludes this argument. Will the clerk adjourn court? This honorable court is now adjourned.